DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Brandon C. Greene has appealed his convictions in the Summit County Court of Common Pleas for aggravated robbery and kidnapping, both with gun specifications, and tampering with evidence. This Court affirms.
 I {¶ 2} Appellant was indicted on fourteen counts in relation to four armed robberies in the Akron, Ohio, area in 2003. One count of the indictment was dropped on the first day of trial. After a jury trial, Appellant was found not guilty of eight of the remaining charges, all of which related to the aggravated robberies of three Akron area businesses. Appellant was found guilty of the five remaining charges as contained in the indictment, all of which related to the aggravated robbery of the Pay Day Cash Advance store ("Pay Day") on June 26, 2003.
 {¶ 3} Specifically, Appellant was found guilty of one count of aggravated robbery, in violation of R.C. 2911.01; a gun specification to the aggravated robbery charge, pursuant to R.C.2941.145; one count of kidnapping, in violation of R.C.2905.01(A)(2); a gun specification to the kidnapping charge, pursuant to R.C. 2941.145; one count of tampering with evidence, in violation of R.C. 2921.12(A)(1); one count of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B), charged as a third degree felony pursuant to R.C. 2921.331(C)(5); and one count of failure to comply with an order or signal of a police office, in violation of R.C.2921.331(B), charged as a fourth degree felony pursuant to R.C.2921.331(C)(4). Appellant was sentenced to a twelve year term of incarceration as a result of the jury conviction.
 {¶ 4} Appellant has timely appealed his convictions for aggravated robbery, kidnapping, and tampering with evidence, asserting one assignment of error.
 II Assignment of Error Number One
"Appellant's convictions for aggravated robbery and kidnapping with gun specifications, and tampering with evidence were against the manifest weight of the evidence."
 {¶ 5} In his sole assignment of error, Appellant has argued that his convictions for aggravated robbery, kidnapping, and tampering with evidence were against the manifest weight of the evidence. Specifically, he has argued that because the jury had to infer all of the necessary elements of aiding and abetting the commission of each crime, his convictions are against the manifest weight of the evidence. We disagree.
 {¶ 6} In reviewing whether a conviction is against the manifest weight of the evidence, this Court must:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 7} Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. State v. Thompkins (1997),78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the fact finder's resolution of the conflicting testimony. Id.
 {¶ 8} In the case sub judice, Appellant was convicted of aggravated robbery, in violation of R.C. 2911.01(A)(1), with a gun specification. R.C. 2911.01 states, in pertinent part:
"(A) No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall do any of the following:
"(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possess it, or use it[.]"
 {¶ 9} A firearm specification may be contained in the indictment when the offender "had a firearm on or about [his] person or under [his] control while committing the offense" and the weapon was brandished, displayed, used or referred to in the commission of the offense. R.C. 2941.145(A).
 {¶ 10} Appellant was also convicted of kidnapping, in violation of R.C. 2905.01(A)(2), with a gun specification. R.C.2905.01(A)(2) states, in pertinent part:
"(A) No person, by force, threat, or deception, * * * shall * * * restrain the liberty of the other person, for any of the following purposes:
"(2) To facilitate the commission of any felony or flight thereafter[.]
 {¶ 11} Appellant first has argued that the State failed to present any evidence that he aided or abetted the principle offender, Roland Greene ("Roland"), in the commission of aggravated robbery and kidnapping. The State has contended that it presented substantial evidence that Appellant aided and abetted Roland in the commission of each offense.
 {¶ 12} Our review of the record reveals that the State presented testimony from Stacy Brake ("Brake") and Charles Karnuth ("Karnuth"), the two employees of Pay Day who were held up at gunpoint by Roland The State also presented testimony from Amy Allen ("Allen"), the woman kidnapped by Roland The three witnesses testified to the following. Allen accidentally backed her car into a parked car in the parking lot near Pay Day. Appellant approached Allen to make sure she was not injured. Brake was the owner of the car that Allen hit and went outside to speak with Allen about the accident. Brake then brought Allen into Pay Day in order to exchange insurance information. After insurance information was exchanged, Allen started to leave Pay Day. As Allen was leaving Pay Day, Roland appeared in the doorway, grabbed her by the arm, pointed a gun at her, and told her to get back inside Pay Day. All three witnesses testified that as Roland entered the PayDay with Allen at gunpoint, he pointed the gun back and forth between the employees and Allen, placed a yellow bag on the counter, and demanded all of the money from the cash register. Brake gave Roland all of the money from the cash register. In both open court and from a photo-line up, Allen identified Appellant as the individual who was in the area of Pay Day and asked her if she was injured after she backed her car into Brake's parked car. Brake and Karnuth identified Roland as the individual who committed the armed robbery of Pay Day and kidnapped Allen at gunpoint. Allen identified Roland from a photo line up as the individual who committed the armed robbery of PayDay and kidnapped her at gunpoint.
 {¶ 13} Amy Bisesi ("Bisesi") also testified to the following for the State. She was stopped at a stop light adjacent to Pay Day when she saw a masked man enter Pay Day at a time that coincided with the commission of the robbery. Bisesi saw the masked man run toward Pay Day, grab a woman who was leaving the Pay Day, and make the woman go back into the Pay Day. Bisesi saw a second man waiting near a black Dodge Intrepid and "peeking around the corner" of the building as if he were waiting for someone and watching the scene. As the masked man exited Pay Day, he ran toward the Intrepid. The man who had been peeking around the corner got in to the driver's side of the Intrepid. Bisesi immediately called police and told them what she had witnessed. She also gave police a description of the car and its occupants.
 {¶ 14} Several police officers also testified for the state. Sergeant Caprez ("Caprez") testified to the following. He responded to the dispatcher's call that an armed robbery had occurred at Pay Day and that two suspects had fled the scene in a black Dodge Intrepid. As Caprez approached Pay Day, he saw a black Dodge Intrepid driving in the opposite direction he was traveling and away from the general area of Pay Day. He turned his car around and began searching for the Intrepid. Other officers joined the search. Caprez located the Intrepid as it ran a red light. He activated his lights and siren and began pursuing the vehicle. Caprez notified the police dispatcher of the Intrepid's location, and approximately ten police cars joined in the pursuit. The two occupants ultimately jumped out of the car and fled the scene on foot. Caprez apprehended the driver of the car on foot. Other officers apprehended Roland, the passenger of the car, on foot. In open court, Caprez identified Appellant as the driver of the Intrepid and the individual he apprehended on foot following the police pursuit.
 {¶ 15} Candace Grubb ("Grubb") of the Akron Police Department Crime Scene Unit testified to the following for the State. She was able to lift a partial fingerprint from the Intrepid that was later identified as belonging to Appellant. Grubb also recovered various items from the Intrepid, including but not limited to a point sight for a gun, a yellow plastic bag, a receipt with the name "Brandon Greene" on it, two white handkerchiefs tied together, and a dark blue bandana.
 {¶ 16} Roland also testified to the following for the State. He and Appellant acted in concert and committed a string of robberies not related to the instant appeal; Roland committed the actual robberies and Appellant drove the getaway car. With regard to the Pay Day robbery, Appellant purchased the gun that Roland used to commit the robbery. Appellant did not know that Roland had robbed Pay Day until Roland got into the car after the robbery and told Appellant to "take off[,]" at which point Appellant exited the parking lot and began his attempt to elude police.
 {¶ 17} Appellant testified to the following in his own defense. On June 26, 2003, when Roland got in the Intrepid, Appellant knew that Roland had just robbed PayDay. Appellant then drove the Intrepid from the scene of the crime "under [his] free will[.]"
 {¶ 18} At the close of all of the evidence, the State admitted numerous exhibits into evidence, including but not limited to photographs of Roland committing the armed robbery of Pay Day; a handgun; bullets; bandanas and scarves; the yellow bag Roland used to carry the money he stole from Pay Day; and an audio recording of the radio transmissions from police during the pursuit of the Intrepid on June 26, 2003.
 {¶ 19} Based on the foregoing, this Court finds that the jury could reasonably conclude that, by driving the getaway car, Appellant participated in the aggravated robbery and kidnapping that occurred at Pay Day. This Court has previously held that driving the getaway car after a robbery serves as the proper basis for a conviction of aiding and abetting the commission of the robbery. State v. Farr (March 4, 1992), 9th Dist. No. 15213, at 6. In addition, this Court has previously held that "[c]ircumstantial evidence from which a jury could infer culpability possesses the same probative value as direct evidence." State v. Wooden (Feb. 11, 1998), 9th Dist. No. 18448, at 7, appeal not allowed (1998), 82 Ohio St.3d 1411, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus, rehearing denied (1991), 62 Ohio St.3d 1410. As such, the jury was entitled to infer, based on the testimony presented, that Appellant did in fact aid and abet Roland in the commission of aggravated robbery and kidnapping. In sum, this Court finds that the jury clearly did not lose its way and create a manifest miscarriage of justice when it convicted Appellant of aggravated robbery with a gun specification and kidnapping with a gun specification.
 {¶ 20} Appellant was also convicted of tampering with evidence, in violation of R.C. 2921.12(A)(1), which states that no person, knowing that an official investigation is likely to be instituted, shall "[a]lter, destroy, conceal, or remove any * * * thing with purpose to impair its * * * availability as evidence in such proceeding or investigation[.]" R.C. 2921.12(A)(1). The indictment specified that Appellant tampered with a cell phone, handgun, and gloves, in violation of R.C. 2921.12(A)(1).
 {¶ 21} Appellant has contended that "there was again no evidence to show that Appellant in any way aided or abetted Roland" in the disposal of the gloves, cell phone and handgun. The State has argued that in attempting to elude the police, Appellant aided and abetted Roland in Roland's efforts to tamper with the evidence at issue.
 {¶ 22} Our review of the record reveals that when testifying for the State, Caprez testified that as he was pursuing the Intrepid, an object was thrown from the passenger side of the car and that the object broke when it hit the ground. Further testimony revealed that a shattered cell phone was found along the route of the police pursuit of the Intrepid. The record also reveals that a pair of gloves and a handgun were found along the route of the police pursuit.
 {¶ 23} When testifying for the State, Roland testified that Appellant threw a cell phone and Roland threw a handgun from the car during the police pursuit. When he testified in his own defense, Appellant testified that he did not throw any evidence from the car during the police pursuit.
 {¶ 24} Based on the foregoing, a reasonable jury could find that Appellant himself threw evidence from the Intrepid during the police pursuit. A reasonable jury could also find that Appellant aided and abetted Roland when Roland threw evidence from the car during the police pursuit. Even though Appellant testified that he did not throw any evidence from the car during the police pursuit, "[t]his Court will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other." State v. Daniels, 9th Dist. No. 03CA008261, 2004-Ohio-828, at ¶ 17. The jury was entitled to disbelieve Appellant's testimony and find that he tampered with evidence. As such, this Court finds that the jury clearly did not lose its way and create a manifest miscarriage of justice when it convicted Appellant of tampering with evidence.
 {¶ 25} In sum, this Court find that Appellant's convictions of aggravated robbery and kidnapping, both with gun specification, and tampering with evidence were not against the manifest weight of the evidence. As a result, Appellant's sole assignment of error lacks merit.
 III {¶ 26} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Slaby, J. Concur.