[Cite as *State v. Thomas*, 2020-Ohio-3538.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No.   19CA011578 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| HOWARD THOMAS | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.   19CR100196 |

DECISION AND JOURNAL ENTRY

Dated: June 30, 2020

CALLAHAN, Presiding Judge.

{¶1}    Defendant-Appellant, Howard Thomas, appeals from his conviction in the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}    Late one evening in February, the police received two phone calls from the area of Washington Avenue and Tower Boulevard in Lorain.  The first call was from a homeowner who had spotted a man breaking into her shed.  The second call was from a homeowner just to the south who had spotted a suspicious truck pulling in and out of driveways with its lights off.  Several officers responded to the area to investigate the two calls.

{¶3}    The officer who responded to the shed break-in found one set of footprints in the fresh snow around the shed and followed them south to the area where the suspicious truck had been spotted.  Meanwhile, another officer located the truck in question and executed a traffic stop.  The truck contained two occupants: the driver, Mr. Thomas, and his passenger.  The officers

identified the passenger as the man who broke into the shed based on the tread pattern on his shoes and the homeowner's identification of his appearance. Though Mr. Thomas claimed that he was not involved with the break-in, the police determined that he acted as the passenger's accomplice.

{¶4} Mr. Thomas was charged with one count of complicity to commit breaking and entering, in violation of R.C. 2911.13(A)/2923.03(A)(2). He waived his right to a jury, and a bench trial ensued. At its conclusion, the trial court found him guilty. The court sentenced him to one year of community control.

{¶5} Mr. Thomas now appeals from his conviction and raises two assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶6} In his first assignment of error, Mr. Thomas argues that his conviction is based on insufficient evidence. This Court disagrees.

{¶7} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in

favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶8}    A person commits breaking and entering if he trespasses in an unoccupied structure "by force, stealth, or deception," and "with purpose to commit therein any theft offense, as defined in [R.C. 2913.01], or any felony." R.C. 2911.13(A). Relevant to this appeal, complicity is established when a person acts with the level of culpability required for an offense in aiding or abetting in the commission of the offense. R.C. 2923.03(A)(2). "To support a conviction for complicity by aiding and abetting * * *, the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "Such intent may be inferred from the circumstances surrounding the crime," *id.*, and "the presence, companionship, and conduct of the defendant before and after the offense is committed." *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, ¶ 13.

{¶9}    Officer Todd Hite testified that, at 11:14 p.m., he was dispatched to a home at the corner of Washington Avenue and Tower Boulevard because the homeowner had seen a man breaking into her shed. The homeowner had seen the man walk westbound on Tower Boulevard, so Officer Hite first drove around that area to look for anyone traveling on foot. When he failed to spot anyone, he circled back to the homeowner's residence and inspected the shed. He discovered one set of footprints in the fresh snow around the shed and followed the tracks on foot. The tracks crossed Tower Boulevard and turned westbound before heading southbound on Washington Avenue toward Redhill Drive. Officer Hite testified that, as he followed the tracks, he received a report that another officer had stopped a suspicious truck near the intersection of

Washington Avenue and Tower Boulevard. Believing the truck was involved in the shed break-in, Officer Hite returned to the shed to investigate and speak with the homeowner.

{¶10} Officer Hite testified that the shed had been secured with two locking mechanisms, both of which had been broken and left in front of the shed door. When he spoke with the homeowner, she was able to describe the clothing of the man she saw breaking into her shed. That clothing description was consistent with the clothing worn by the passenger who was riding in the truck that the police had stopped and, when given an opportunity to view the passenger, the homeowner confirmed that he was the man she saw break into her shed. Officer Hite also testified that the tread pattern on the passenger's shoes matched the tread pattern of the footprints in the snow leading away from the shed.

{¶11} Officer Jesse Perkins also responded when dispatch released information about the break-in. He testified that he was en route to the scene when a second dispatch came through. The second dispatch concerned "a suspicious, dark-colored truck that had been pulling in and out of driveways with no lights on." The truck had been spotted on Redhill Drive, which was one street south of the break-in location. Officer Perkins testified that his colleague, Officer Payne, was dispatched to that location and stopped the truck just before he arrived.

{¶12} Officer Perkins met Officer Payne near the corner of Washington Avenue and Tower Boulevard, where Officer Payne had stopped the truck. Officer Perkins testified that he was familiar with the truck's passenger and was aware that he had a lengthy criminal history that included multiple thefts. He was not familiar with the driver of the truck, Mr. Thomas, but spoke with him at the scene. Mr. Thomas indicated that he had been driving around when his friend, the passenger, called him and asked for a ride. Meanwhile, the passenger said he and Mr. Thomas had just been riding around drinking beers. Although Mr. Thomas denied knowing anything about the

shed break-in, he had no explanation as to why he was spotted in the area of Redhill Drive. The police also failed to find the beer that the passenger claimed he and Mr. Thomas had been drinking. Officers repeatedly asked Mr. Thomas why he was in the area, but Mr. Thomas never provided them with any specific reason. Officer Perkins described Redhill Drive as a short, secluded street that most drivers avoided unless they lived there. He testified that Mr. Thomas and the passenger

> kept going back and forth about what they were doing there, how they got there. First they went out driving around, then they were drinking beer driving around * * * [t]hen [the passenger] called him for a ride, which is what Mr. Thomas said, * * * and then [the passenger] said "Well, my phone's broken." * * * So we were trying to figure out what they were doing together and why they weren't telling the truth.

The officer also testified that both Mr. Thomas and the passenger said their cell phones were broken, so it was not clear to the officers how the passenger would have called Mr. Thomas for a ride.

{¶13} Once he finished interviewing the homeowner, Officer Hite joined his fellow officers at the truck and spoke with Mr. Thomas. He testified that Mr. Thomas claimed the passenger was his friend, but referred to the man as Rodney when his name was actually Ron. The police found tools on the passenger's side floorboard of the truck, including a hammer, pliers, and wrenches. Mr. Thomas conceded that he owned the tools, and Officer Hite believed the passenger might have used one or more of them to break the locks on the homeowner's shed. Officer Hite testified that the passenger's footprints led down to Redhill Drive, where Mr. Thomas had been spotted pulling into one or more driveways with his headlights off. The officer stated that, when break-ins occur, it is common for thieves to have an accomplice waiting to pick them up in a designated area, often with the vehicle's lights off.

{¶14} Apart from the tools the police found in Mr. Thomas' truck, Officer Hite testified that they also found a Craftsman lawn clippings bag that one might attach to a lawnmower. He

testified that the bag was on the rear bench of the truck, concealed beneath a blue tarp. Although the bag had not been taken from the homeowner's shed, Officer Hite indicated that it was the type of item people usually store in sheds. He stated that he found its presence in the truck unusual, given that it was the middle of winter. He also found unusual the fact that Mr. Thomas had a large flashlight lying on the rear bench of the truck next to the tarp. Based on the late hour, the suspicious mix of items in Mr. Thomas' truck, his lack of a reasonable explanation for his presence in the area, the inconsistencies between his and the passenger's statements, and his actions in waiting in his truck in the dark for the passenger, the police determined that he was complicit in the break-in.

{¶15} Mr. Thomas argues that his conviction is based on insufficient evidence because the evidence showed that he merely associated with the passenger, not that he actively assisted or encouraged him. He notes that he was not parked on the same street where the break-in occurred and the passenger returned to his truck empty-handed, such that he had no way to know that it had occurred. He also notes that he complied with the police when they stopped his truck and asked him questions. Because there was no evidence that he aided or even knew about the break-in, Mr. Thomas argues, the State failed to prove that he was complicit in that crime.

{¶16} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded that the State proved, beyond a reasonable doubt, that Mr. Thomas aided or abetted the break-in herein by supporting, assisting, or cooperating with the passenger in the commission of the crime. *See Jackson*, 443 U.S. at 319; *Johnson*, 93 Ohio St.3d 240 at syllabus. "Ohio courts have recognized that '[c]omplicity or aiding and abetting may be established by overt acts of assistance such as driving a getaway car * * *.'" (Alternation in original.) *State v. Larry*, 5th Dist. Holmes No. 15CA011, 2016-Ohio-829, ¶ 25, quoting *State v.*

*Landingham*, 8th Dist. Cuyahoga No. 84715, 2005-Ohio-621, ¶ 14. *Accord State v. Greene*, 9th Dist. Summit No. 21795, 2004-Ohio-3944, ¶ 19. The State presented evidence that Mr. Thomas drove his truck to a secluded street near the scene of the break-in, repositioned the truck with its headlights off, and waited for the passenger. It presented evidence that the passenger broke into the homeowner's shed and then walked south to Redhill Drive to meet up with Mr. Thomas. It was after 11:00 p.m. at the time, and Mr. Thomas was unable to provide the police with any reasonable explanation for his presence in the area. He and the passenger gave inconsistent statements on that point, and neither ever mentioned the passenger exiting or returning to the truck on foot on Redhill Drive. Further, the police found several suspicious items in Mr. Thomas' truck, including tools on the passenger's side floorboard, a concealed lawn clippings bag, and a large flashlight. While the evidence against Mr. Thomas was circumstantial in nature, "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." *Jenks*, 61 Ohio St.3d 259, at paragraph one of the syllabus. Further, a sufficiency review commands the court to make all reasonable inferences in favor of the State. *Jenks*, 61 Ohio St.3d at 273. Upon review, a rational trier of fact could have concluded that Mr. Thomas shared the passenger's intent and assisted him by acting as his getaway driver. Because the State set forth sufficient circumstantial evidence in support of his conviction, Mr. Thomas' argument lacks merit. His first assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 2

THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.

{¶17} In his second assignment of error, Mr. Thomas argues that his conviction is against the manifest weight of the evidence. This Court disagrees.

{¶18} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶19} Mr. Thomas testified in his own defense. He claimed that, the day of the break-in, he repeatedly called a woman named Laura about a tire he had given to her boyfriend the week before. Mr. Thomas testified that Laura was "a friend of [a] friend" and he had offered to give her boyfriend the tire for free. Even so, Mr. Thomas testified, Laura's boyfriend had promised him some money and he hoped to collect the money that day. Mr. Thomas testified that the passenger was staying with Laura and he met the passenger when he dropped off the tire at her home. According to Mr. Thomas, he called Laura at least five or six times the day of the break-in to check whether her boyfriend was home yet. He claimed that, when he called her again around 11:00 p.m., the passenger answered her cell phone.

{¶20} Mr. Thomas testified that the passenger asked him for a ride. Because he was already planning to take a trip to the convenience store, he agreed to pick up the passenger. He testified that the passenger directed him to Redhill Drive and had him park there. Mr. Thomas claimed that the passenger told him he needed to run into a friend's house and pick up some money. He further claimed that the passenger asked him to park several houses down from the friend's house so that the man's wife would not know the passenger was there. Mr. Thomas testified that he pulled into a driveway to turn his truck around before parking on the street to wait for the

passenger. He claimed that he turned off his headlights as a courtesy to the homeowners because it was dark outside.

{¶21} Mr. Thomas testified that he waited about ten minutes for the passenger to return. When the passenger did so, he told Mr. Thomas that his friend did not have money for him after all and they started to leave the area. Mr. Thomas testified that he was surprised when the police stopped his truck shortly thereafter because he did not know anything about the break-in. He agreed that the tools in the truck were his, but claimed that he always kept some tools in the truck.

{¶22} Mr. Thomas acknowledged that he did not tell the police about Laura or about agreeing to give the passenger a ride so that he could pick up money from a friend. He further acknowledged that he failed to provide his attorney with that information in advance of trial so that the State might have the opportunity to contact Laura or her boyfriend. Mr. Thomas could not recall why he did not tell the police about Laura or his reason for being on Redhill Drive that evening. It was his testimony that the police never asked and that things happened too quickly.

{¶23} Mr. Thomas argues that his conviction is against the manifest weight of the evidence because the evidence tended to show that he was merely present on the evening of the break-in. He notes that, unlike the passenger, he had no criminal history. Further, he notes that the police never found any items from the shed in his truck or other direct evidence to tie him to the break-in. Because he was convicted for merely associating with the passenger, Mr. Thomas argues, the trier of fact lost its way when it convicted him.

{¶24} Having reviewed the record, this Court cannot conclude that the trier of fact clearly lost its way when it found Mr. Thomas guilty of complicity to commit breaking and entering. *See Otten*, 33 Ohio App.3d at 340. Although Mr. Thomas offered an explanation for his behavior when testifying at trial, he failed to give any of that information to the police on the night of the

break-in. Instead, he told the police that he was driving around when his friend called him for a ride. The trier of fact was in the best position to evaluate the credibility of the witnesses and was "'free to believe all, part, or none of the testimony of each witness.'" *State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. Given Mr. Thomas' behavior on the evening of the break-in, the trier of fact reasonably could have concluded that his testimony was not truthful. Mr. Thomas has not shown that this is the exceptional case where the evidence weighs heavily against his convictions. *See Otten* at 340. As such, this Court rejects his argument that his conviction is against the manifest weight of the evidence. Mr. Thomas' second assignment of error is overruled.

### III.

{¶25} Mr. Thomas' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
LYNNE S. CALLAHAN
FOR THE COURT

CARR, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.